1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                     FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JAMIE LYNN TURNER,                         Case No.  1:21-cv-01588-BAM

12                  Plaintiff,
                                                **ORDER REGARDING PLAINTIFF'S**
13          v.                                  **MOTION FOR SUMMARY JUDGMENT**

14   LELAND DUDEK, Acting Commissioner          (Docs. 13, 16, 17)
     of Social Security,[1]
15

16                  Defendant.

17

18

19                              **<u>INTRODUCTION</u>**

20          Plaintiff Jamie Lynn Turner ("Plaintiff") seeks judicial review of a final decision of the

21   Commissioner of Social Security ("Commissioner") denying her application for Supplemental

22   Security Income under Title XVI of the Social Security Act.  The parties consented to magistrate

23   jurisdiction and the case was authorized to proceed before the undersigned for all further proceedings

24   including trial and entry of judgment.  (Doc. 9.)  The parties' briefing on the motion was submitted,

25   without oral argument, to Magistrate Judge Barbara A. McAuliffe.  (Docs. 13, 16, 17.)  Having

26   _____

27   [1] Leland Dudek became the Acting Commissioner of Social Security in February 2025.  Pursuant to
     Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek is substituted for Kilolo Kijakazi as
28   Defendant in this suit.

                                              1

considered the parties' briefs, along with the entire record in this case, the Court finds that the decision of the Administrative Law Judge ("ALJ") was not supported by substantial evidence in the record and was not based upon proper legal standards.  Accordingly, this Court GRANTS Plaintiff's motion for summary judgment.

## FACTS AND PRIOR PROCEEDINGS

Plaintiff applied for Title XVI Supplemental Security Income on October 24, 2019, alleging that she became disabled on March 15, 2019.  AR 187-195. [2]  The claim was denied initially on January 8, 2020, and on reconsideration on June 16, 2020.  AR 82, 115-121.  Plaintiff requested a hearing before an administrative law judge ("ALJ") and ALJ Brian Crockett held a hearing on January 20, 2021.  AR 41-72.  ALJ Crockett issued an order denying benefits on the basis that Plaintiff was not disabled on March 24, 2021.  AR 13-32.  Plaintiff sought review of the ALJ's decision, which the Appeals Council denied.  AR 1-7.  This appeal followed.

### Medical Record

The relevant medical record was reviewed by the Court and will be referenced below as necessary to this Court's decision.

### The ALJ's Decision

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff was not disabled under the Social Security Act.  AR 13-32.  Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the application date of September 20, 2019.  AR 18.[3]  The ALJ identified the following severe impairments: left frontal brain mass (post craniotomy); morbid obesity; status post craniotomy and open biopsy; status post gross total resection; status post redo craniotomy; major depressive disorder; and generalized anxiety

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.
[3] The ALJ states that Plaintiff's application date was September 20, 2019, though the Application Summary for Supplemental Security Income indicates that Plaintiff applied on October 24, 2019.  AR 187-195

2

disorder.  AR 19.  The ALJ further determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled any of the listed impairments.  AR 19-21.

Based on a review of the entire record, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work with the nonexertional limitations that Plaintiff: could occasionally perform all postural activities but never balance or climb ladders, ropes, or scaffolds; must avoid all hazards such as unprotected heights or dangerous unshielded moving mechanical parts; should be limited to simple, routine work in occupations with an SVP of 2 or lower, performed in a low stress setting defined as one having no fast-paced production requirements such as fast-paced assembly line work or high volume piecemeal quotas, no greater than occasional changes in work routine or work setting, and requiring only occasional simple work-related decision making; and should not be required greater than occasional interaction with supervisors, co-workers, or the general public.  AR 21.  The ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," as well as "medical opinion(s) and prior administrative medical finding(s)."  *Id.*

The ALJ found that Plaintiff was unable to perform any past relevant work; that Plaintiff was a younger individual as of the application date; had at least a high school education; and that transferability of job skills was not an issue in the case.  AR 26.  Given Plaintiff's age, education, work experience, and residual functional capacity, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  AR 26-27.  The ALJ noted that examples of jobs consistent with Plaintiff's age, education, work experience, and residual functional capacity included: (1) Document Preparer (DOT No. 249.587-018, unskilled, sedentary, with 19,000 jobs available in the national economy); (2) Surveillance Systems Monitor (DOT No. 379.367-010, unskilled, sedentary, with 113,010 jobs available in the national economy); and (3) Auto Grinding Machine Operator (DOT No. 690.685-194, unskilled, sedentary, with 29,980 jobs available in the national economy).  AR 27.  The ALJ therefore concluded that Plaintiff had not been disabled since the application date of September 20, 2019.  AR 28.

///

///

3

**SCOPE OF REVIEW**

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act.  In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance.  *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.  The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).  In weighing the evidence and making findings, the Commissioner must apply the proper legal standards.  *E.g., Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988).  This Court must uphold the Commissioner's determination that the claimant is not disabled if the Commissioner applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence.  *See Sanchez v. Sec'y of Health and Human Servs.*, 812 F.2d 509, 510 (9th Cir. 1987).

**REVIEW**

In order to qualify for benefits, a claimant must establish that he or she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 1382c(a)(3)(A).  A claimant must show that he or she has a physical or mental impairment of such severity that he or she is not only unable to do his or her previous work, but cannot, considering his or her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989).  The burden is on the claimant to establish disability.  *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

///

///

///

4

# DISCUSSION[4]

Plaintiff argues that the ALJ erred by refusing to admit or consider two medical source opinions produced after the administrative hearing. (Doc. 13 at 9-13, Doc. 17 at 2-5.) Plaintiff next argues that the ALJ erred by failing to provide clear and convincing reasons for discounting Plaintiff's subjective symptoms. (Doc. 13 at 14-16.) Plaintiff further argues that the ALJ failed to adequately evaluate the functional impact of Plaintiff's morbid obesity. (Doc. 13 at 16-17.) Finally, Plaintiff argues that the ALJ failed to resolve apparent inconsistencies between the Vocational Expert's testimony and the Dictionary of Occupational Titles at Step Five. (Doc. 13 at 17-19, Doc. 17 at 5-6.)

Defendant in turn argues that the ALJ properly excluded Plaintiff's late-submitted medical source statements and that the late-submitted evidence had no bearing on the ultimate decision. (Doc. 16 at 14-18.) Defendant further argues that the ALJ properly discounted Plaintiff's subjective complaints as inconsistent with the objective medical evidence, activities of daily living, and conservative treatment. (*Id.* at 18-22.) Defendant also argues that the ALJ accounted for the effects of Plaintiff's obesity. (*Id.* at 23-24.) Finally, Defendant contends that the ALJ's Step Five finding was supported by substantial evidence. (*Id.* at 24-26.)

## A. Plaintiff's Subjective Complaints

Plaintiff contends that the ALJ committed harmful error by failing to provide clear and convincing reasons for rejecting Plaintiff's testimony, specifically regarding Plaintiff's allegations of mental and physical dysfunction related to Plaintiff's brain tumor and resulting surgeries. (Doc. 13 at 14-16.) In deciding whether to admit a claimant's subjective complaints, the ALJ must engage in a two-step analysis. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014); *Batson v. Comm'r*, 359 F.3d 1190, 1196 (9th Cir. 2004). First, the claimant must produce objective medical evidence of her impairment that could reasonably be expected to produce some degree of the symptom or pain alleged. *Garrison*, 759 F.3d at 1014. If the claimant satisfies the first step and there is no evidence of

---

[4] The parties are advised that this Court has carefully reviewed and considered all of the briefs, including arguments, points and authorities, declarations, and/or exhibits. Any omission of a reference to any specific argument or brief is not to be construed that the Court did not consider the argument or brief.

1  malingering, the ALJ may reject the claimant's testimony regarding the severity of her symptoms only

2  by offering specific, clear and convincing reasons for doing so.  *Id.* at 1015.

3         Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be

4  expected to cause the alleged symptoms.  AR 22.  However, the ALJ discounted Plaintiff's statements

5  concerning the intensity, persistence, and limiting effects of those symptoms, noting that the

6  statements were not consistent with medical evidence and other evidence in the record.  *Id.*  The ALJ

7  was therefore required to provide specific, clear and convincing reasons for discounting Plaintiff's

8  subjective complaints.

9         First, the ALJ found that Plaintiff's allegations were not fully consistent with the medical

10  records.  AR 22-24.  Although lack of supporting medical evidence cannot form the sole basis for

11  discounting testimony, it is a factor that the ALJ can consider.  *See Burch v. Barnhart*, 400 F.3d 676,

12  681 (9th Cir. 2005).

13         Regarding Plaintiff's physical impairments, the ALJ noted:

14         To further support the residual functional capacity contained herein the
           undersigned turned to the claimant's medical records. While the
15         evidence does demonstrate several severe physical impairments, said
           impairments were essentially no more than mild to moderate objectively,
16         post treatment. As for her mental impairments, the claimant received
           sporadic mental health treatment throughout the relevant period, with
17         records reflecting little more than a conservative regimen of
           psychotropic medication with no evidence of any significant
18         psychotherapy. Overall, there is little evidence to suggest that the
           claimant had any significant complications associated with said
19         conditions that were intractable in nature, precluding all work activity.
           On the contrary, the evidence clearly demonstrated that the claimant was
20         capable of performing a range of sedentary and unskilled exertional
           work activity, even when accorded significant benefit of the doubt and
21         afforded numerous additional nonexertional accommodations…
22
           Based on the medical evidence of record discussed above, the
23         undersigned finds that the claimant's allegations as to the intensity and
24         limiting effects of her physical impairments are not fully consistent with
           the medical evidence of record and certainly do not preclude her from
25         performing the limited range of work activity prescribed in the residual
           functional capacity. While the claimant has been diagnosed with several
26         physical impairments, she has received the proper treatment with signs

27

28

6

of improvement. As such, there is simply no indication that the claimant was physically disabled for a continuous twelve-month period

AR 22-23.  The ALJ additionally summarized Plaintiff's treatment notes related to her physical impairments.  AR 22-24.  Regarding Plaintiff's mental impairments, the ALJ noted:

> Turning more specifically to the claimant's mental impairments, examination findings from physicians and other treating sources have essentially shown normal mental functioning with no significant restrictions from a mental health standpoint since the Title XVI application date. More specifically, upon exam in February 2020, the claimant's grooming was good; her eye contact was appropriate; her behavior was "cooperative," and her mood was normal with a congruent affect. The claimant's insight, impulse and judgment also appeared unimpaired as she ambulated with a normal gait/posture (Exhibit 3A/8).

> More recently, in November 2020, progress notes from Clinica Sierra Vista indicated that the claimant's mood was euthymic and that her affect was of a normal range. Her thought process was coherent, relevant and logical and her speech was normal. The claimant's thought content demonstrated no perceptual disturbances, no suicidal/homicidal ideations/plans/intent or inappropriate ideas. Dr. Wallace added that the claimant's insight and reliability was "good," and that her judgment was "unimpaired." Dr. Wallace ultimately diagnosed the claimant with a generalized anxiety disorder while adjusting her prescribed medication dosage (Exhibit 17F/1-4).

> In addition, although medication appears to attenuate the claimant's condition, her symptoms continue to wax and wane. The evidence indicates strong psychological underpinnings to her brain tumor/subsequent procedures, and her somatic focus serves to magnify mental health symptoms, thereby impinging upon sustainability/stress tolerance. However, due a lack of significant treatment/complaints, there are no documented findings that support a finding of disability.

> Based on the above medical evidence of record concerning the claimant's severe mental impairments, the undersigned finds her capable of performing work in the residual functional capacity contained herein. Similarly, while the claimant has experienced symptoms associated with depression and anxiety, recent findings indicate that he had shown improvement via prescribed medication (See Exhibit 17F). This along with the claimant's reported activities of daily living and detailed testimony demonstrates her ability to concentrate and to appropriately interact with others. Therefore, the undersigned finds that the totality of the medical evidence of record supports her ability to perform sedentary

1    and unskilled work with the previously mentioned additional postural,
2    environmental, and mental limitations.

3    AR 24.

4         The ALJ appropriately contrasted Plaintiff's symptoms allegations with the medical record as

5    one factor in discounting Plaintiff's testimony.  For instance, in examining Plaintiff's physical

6    impairments, the ALJ highlighted relatively normal findings, including post-surgery.  *See* AR 274

7    (July 2019 Discharge Summary with normal vital signs, HEENT, neck, heart, lungs, abdomen,

8    extremities finding post-surgery and noting "The patient is awake and alert, oriented to time, space,

9    and person normal. No focal motor deficit noticed. Speech normal. Cranial nerves grossly intact. No

10   involuntary limb movement noted."); 319 (April 2020 initial radiation oncology consultation report

11   noting "She denies any complaints at this time. No headaches, nausea, vomiting, or seizures. No focal

12   neurologic deficit.").  Additionally, the ALJ cited evidence of relatively normal findings related to

13   Plaintiff's mental impairments.  *See* AR AR 90-91 (reference to February 2020 exam noting

14   "grooming good, eye contact appropriate, gait and postural nl, cooperative behavior, motor activity

15   wnl, mood nl, affect congruent to mood, speech nl… insight good, judgment unimpaired, reliability

16   good, impulse unimpaired," though also noting "recurrent MDD, remission status unspecified – start

17   sertraline"); 680-83 (November 2020 report noting Plaintiff was "cooperative and collaborative" and

18   normal affect, speech, thought process, thought content, insight, judgment, reliability, and impulse

19   findings).  The ALJ therefore appropriately examined the medical evidence as one factor in

20   discounting Plaintiff's symptoms testimony.

21        In Defendant's discussion of the ALJ's examination of the objective medical evidence,

22   Defendant appears to argue that the ALJ used effective control of impairments with medication as a

23   further basis for discounting Plaintiff's symptoms testimony.  (Doc. 16 at 19-20.)  "Impairments that

24   can be controlled effectively with medication are not disabling."  *Warre v. Comm'r of Soc. Sec.*

25   *Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *see also* 20 C.F.R. § 404.1529(c)(3)(iv), (v) (medication

26   effectiveness and treatment history are relevant factors for evaluating a claimant's symptom

27   testimony).  However, while Defendant now advances this rationale, it is unclear from the ALJ's

28   analysis whether the ALJ utilized effective control of impairments as a basis for discounting Plaintiff's

8

1  symptoms testimony.  AR 22-24.  Instead, the ALJ notes that "although medication appears to

2  attenuate the claimant's condition, her symptoms continue to wax and wane," suggesting that

3  Plaintiff's symptoms were not effectively controlled.  AR 24.  Additionally, the Ninth Circuit has

4  noted that "[l]ong-standing principles of administrative law require us to review the ALJ's decision

5  based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that

6  attempt to intuit what the adjudicator may have been thinking."  *Bray v. Comm'r of Soc. Sec. Admin.*,

7  554 F.3d 1219, 1225 (9th Cir. 2009).  The Court therefore may not attempt to intuit the ALJ's

8  reasoning in discounting Plaintiff's symptoms testimony.  Defendant's argument that the ALJ may

9  have also used effective control of impairments as a basis for discounting Plaintiff's symptoms

10  testimony is therefore unavailing.

11      Second, the ALJ wrote that given Plaintiff's "reported activities of daily living (minor

12  household chores, grocery shopping, etc.) (Hearing Testimony), the undersigned has more than

13  accommodated for her physical impairments by further reducing her to sedentary exertional work with

14  the previously mentioned additional nonexertional limitations."  AR 24.  The ALJ later noted that the

15  objective examination results "along with the claimant's reported activities of daily living and detailed

16  testimony demonstrates her ability to concentrate and to appropriately interact with others."  *Id.*  An

17  ALJ may properly discount a claimant's subjective complaints when the daily activities demonstrate an

18  inconsistency between what the claimant can do and the degree that disability is alleged.  *Molina v.

19  Astrue*, 674 F.3d 1104, 1112–13 (9th Cir. 2012) (an ALJ may consider "whether the claimant engages

20  in daily activities inconsistent with the alleged symptoms"), superseded by regulation on other

21  grounds.  Even where a plaintiff's activities suggest some difficulty functioning, they may be grounds

22  for discrediting the claimant's testimony to the extent that they contradict claims of a totally

23  debilitating impairment.  *Id*. at 1113.

24      However, the Ninth Circuit has cautioned that a claimant's ability to complete minimal daily

25  activities does not detract from the claimant's credibility.  *See Cooper v. Bowen*, 815 F.2d 557, 561

26  (9th Cir. 1987) ("evidence that [claimant] could assist with some household chores was not

27  determinative of disability. 'Disability does not mean that a claimant must vegetate in a dark room

28  excluded from all forms of human and social activity.'") (quoting *Smith v. Califano*, 637 F.2d 968,

9

1    971 (3d Cir. 1981)); *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("This court has

2    repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as

3    grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her

4    credibility as to her overall disability.").

5        Here, some of Plaintiff's daily activities cited by the ALJ – "minor household chores, grocery

6    shopping" – are the same as those the Ninth Circuit has cautioned against using to discredit symptoms

7    testimony.  *Id.*  Review of Plaintiff's testimony also indicates that Plaintiff received assistance with

8    some of those chores, undermining the notion that she was capable of regularly doing household

9    chores by herself.  AR 50-51 (Q. Ms. Turner, do you receive in-home supportive services? A. Yes. Q.

10   Okay. And what do these – what does this service do for you? A. What do they do for me? Oh, when

11   they come out? Q. Yeah. A. They only come out three times a week. And she like takes me to get my

12   medicine. She'll take me shopping to get food. And then whenever I have to go to a doctor

13   appointment, she takes me. Let me see. She gives me my medicine. And she cooks for me. Yeah. She

14   cooks food. Q. She cooks for you? A. Yeah. Q. Okay. Does she do any cleaning for you? A. Yeah,

15   cleans.)  The record further indicates that Plaintiff experienced significant difficulty with grocery

16   shopping.  AR 51 (Q. For instance, do you – like if you go in a grocery store and you're by yourself,

17   would you be overwhelmed? A. Yeah. I get overwhelmed. Yeah. I don't like to like talk to people

18   when I go. Q. Okay. Would you remember why you were in the store in the first place? A. Most of the

19   time, I do. Sometimes I don't, though. I don't know. I'm like different since my surgeries.)  As

20   Plaintiff's reported daily activities appear to be minimal, they are not a proper basis for discounting

21   Plaintiff's symptoms testimony.  *Vertigan*, 260 F.3d at 1050.

22       Defendant argues that the ALJ appropriately used Plaintiff's reported daily activities to

23   discount her symptoms testimony, suggesting that Plaintiff's testimony regarding her supportive

24   service aide implies that Plaintiff was able to manage her household chores on her own most of the

25   time.  (Doc. 16 at 22.)  However, Defendant does not cite any testimony or other evidence in which

26   Plaintiff testified to being able to perform household chores, only that her supportive service aide did

27   the cooking and cleaning three times per week.  (*Id.*)  Defendant further cites a case in which the Ninth

28   Circuit found that the ALJ appropriately contrasted Plaintiff's allegations with the medical record,

1  limited treatment, and daily activities.  *Klyse v. Colvin,* 556 F. App'x 615, 615–16 (9th Cir. 2014)

2  (unpublished).  In that case, the Ninth Circuit noted that the ALJ "considered the testimony that

3  [plaintiff's] children helped around the house but nevertheless found that [plaintiff] could perform a

4  range of sedentary work." *Id.* at 616.  However, that plaintiff's daily activities included a broader

5  range of daily activities – "three foster children, housework, gardening, and swimming" – that the

6  plaintiff appeared to be able to accomplish with help. *Id.* at 615.  In contrast, Plaintiff testified that her

7  supportive service aide would cook, clean, and take Plaintiff out to get medicine or food.  AR 50-51.

8  Plaintiff here did not testify that she herself could cook or clean, even with help. *Id.*  Because the cited

9  testimony suggests Plaintiff relied upon her supportive service aide to accomplish basic household

10  chores and for help in picking up medicine and food, Defendant's argument is unavailing.

11      Third, the ALJ noted that "for her mental impairments, the claimant received sporadic mental

12  health treatment throughout the relevant period, with records reflecting little more than a conservative

13  regimen of psychotropic medication with no evidence of any *significant* psychotherapy."  AR 22.  The

14  ALJ also later summarized that "Objective signs and findings such as these, as well as contained

15  throughout the record, along with her conservative treatment following surgery, simply do not support

16  the severity of the claimant's allegations regarding her physical impairments."  AR 23.

17      An ALJ is permitted to consider evidence of conservative treatment in evaluating a claimant's

18  subjective complaints.  *See Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) (finding evidence of

19  conservative treatment sufficient to discount claimant's testimony regarding severity of impairment).

20  Yet, "the fact that treatment may be routine or conservative is not a basis for finding subjective

21  symptom testimony unreliable absent discussion of the additional, more aggressive treatment options

22  the ALJ believes are available." *Block v. Berryhill*, No. 2:16-cv-2230-EFB, 2018 WL 1567814 at *5

23  (E.D. Cal. Mar. 31, 2018), quoting *Moon v. Colvin*, 139 F.Supp.3d 1211, 1220 (D. Or. 2015); *see also*

24  *Wheeler v. Kijakazi*, No. 1:21-cv-1225 JLT-BAM, 2023 WL 4146215, at *4 (E.D. Cal. June 23, 2023).

25      In evaluating social security claims involving mental health issues, courts have found that

26  medication prescriptions may indicate that the treatment was not conservative.  For instance, the Ninth

27  Circuit held that an "ALJ improperly characterized [a claimant's] treatment as 'limited and

28  conservative' given that she was prescribed a number of psychiatric medications." *Drawn v.*

1  *Berryhill*, 728 F. App'x 637, 642 (9th Cir. 2018).  While courts have differed on what medications

2  constituted conservative treatment, they have clarified that some prescription medications and the

3  adjustment of those prescriptions indicated that the treatment was not conservative.  *See Armando R.*

4  *E. v. Kijakazi*, No. 2:22-CV-02907-GJS, 2023 WL 3292855, at *5 (C.D. Cal. May 5, 2023) (holding

5  that the ALJ improperly relied on conservative treatment to discount Plaintiff's symptoms testimony

6  where the record reflected multiple psychiatric prescriptions including Klonopin and modifications of

7  said prescriptions); *Saltzman v. Comm'r of Soc. Sec.*, No. 2:18-cv-2215-DMC, 2019 WL 6683130, at

8  *14 (E.D. Cal. Dec. 6, 2019) (finding that plaintiff's treatment "has not been conservative" where

9  plaintiff's "mental health treatment involves powerful prescription medications [including Klonopin],

10  which doctors continually adjust due to side effects and varying effectiveness"); *Maria B. v. Saul*, No.

11  EDCV 20-192-KK, 2020 WL 11884826, at *7 (C.D. Cal. Oct. 30, 2020) ("Courts have recognized

12  treatment involving [medications such as Zoloft] is not 'conservative'");*Cabral v. Comm'r of Soc.*

13  *Sec.*, No. 1:21-cv-00128-CDB (SS), 2025 WL 795978, at *13 (E.D. Cal. Mar. 13, 2025) ("prescription

14  of medications such as Zoloft and Seroquel is generally recognized as not conservative") (citing

15  *Carden v. Colvin*, No. CV 13-3856-E, 2014 WL 839111, at *3 (C.D. Cal. Mar. 4, 2014)).

16        Here, the ALJ does not address which additional, more aggressive treatment options would be

17  available to Plaintiff.  AR 21-24.  While the ALJ noted that Plaintiff's treatment reflected "little more

18  than a conservative regimen of psychotropic medication with no evidence of any *significant*

19  psychotherapy," it is unclear why the ALJ believes that psychotherapy would be a more aggressive

20  treatment option than psychotropic medication.  AR 22.  Additionally, the record indicates that

21  Plaintiff's psychotropic medications were modified, suggesting that the treatment was not

22  conservative.  *See* AR 530 (April 2020 psychiatrist report noting "Assessment: MDD Plan: zoloft

23  25mg FU: 137/85 hr 100 counseling 1 mo"); 680-81 (November 2020 progress note with psychiatrist

24  noting "Current meds: effexor 75mg klonopin 1 mg helpful h/o remeron hydroxyzine").  The ALJ

25  therefore improperly relied on conservative treatment as a basis for discounting Plaintiff's testimony.

26  *Block*, 2018 WL 1567814 at *5.

27        Fourth, the ALJ noted that "for her mental impairments, the claimant received sporadic mental

28  health treatment throughout the relevant period, with records reflecting little more than a conservative

regimen of psychotropic medication with no evidence of any *significant* psychotherapy." AR 22. An ALJ may consider "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment" in credibility evaluations. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). While the ALJ suggests Plaintiff only sought treatment sporadically, the record instead indicates that Plaintiff sought mental health treatment and returned for further medication modifications from her psychiatrist. AR 529-530 (April 2020 psychiatrist visit noting "Assessment: MDD Plan: zoloft 25mg FU: 137/85 hr 100 counseling 1 mo"); AR 534 (February 2020 psychiatrist visit); 680-81 (November 2020 progress note with psychiatrist noting "Current meds: effexor 75mg klonopin 1 mg helpful h/o remeron hydroxyzine"); 698 (September 2020 progress note with psychiatrist). This history does not indicate a failure to seek treatment but instead suggests Plaintiff was attempting to manage her conditions and medication. Failure to seek treatment was therefore not an appropriate basis for discounting Plaintiff's symptoms testimony.

As the ALJ failed to utilize or articulate proper bases for evaluating Plaintiff's symptoms testimony beyond the lack of supporting medical evidence, the ALJ erred in assessing Plaintiff's symptoms. *Burch*, 400 F.3d at 681.

**B. Remedy**

The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Unless "the record has been fully developed and further administrative proceedings would serve no useful purpose," remand for further proceedings is warranted. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). As it is not clear that "further administrative proceedings would serve no useful purpose," remand for further proceedings is appropriate. *Id.*; *see also Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015) ("A district court may reverse the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing, but the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.") (internal quotes and citations omitted). On remand, the ALJ should specifically address Plaintiff's symptoms testimony.

1    Having found that remand is warranted, the Court declines to address Plaintiff's remaining

2    arguments that the ALJ erred.  *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we

3    remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground

4    for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F.Supp.2d 1147, 1153 n.7 (C.D. Cal.

5    2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide

6    plaintiff with any further relief than granted, and all of which can be addressed on remand."); *Marcia*

7    *v. Sullivan*, 900 F.2d 172, 177 n.6 (9th Cir. 1990) ("Because we remand for reconsideration of step

8    three, we do not reach the other arguments raised.").

9    ///

10    ///

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28    ///

## CONCLUSION AND ORDER

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, IT IS HEREBY ORDERED as follows:

1.    Plaintiff's appeal from the administrative decision of the Commissioner of Social Security is GRANTED;

2.    The agency's determination to deny benefits is REVERSED; and

3.    The Clerk of this Court is directed to enter judgment in favor of Plaintiff Jamie Lynn Turner and against Defendant Leland Dudek, Acting Commissioner of Social Security.


IT IS SO ORDERED.

Dated:    **May 27, 2025**            /s/ *Barbara A. McAuliffe*
                                    UNITED STATES MAGISTRATE JUDGE

15